**NOVA CHEMICALS, INC., Plaintiffs,**

v.

**GAF CORPORATION, et al, Defendants.**

No. 1:93–CV–125.

United States District Court,
E.D. Tennessee.

Nov. 15, 1996.

---

Commerce Clause issue, the Court will also consider the merits of GAF's Commerce Clause defense.

Bruce C. Bailey, N. Kirkpatrick Brown, Chambliss & Bahner, Chattanooga, TN, Kevin K. Douglas, Kenneth K. Kilbert, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, for Nova Chemicals, Inc.

James W. Gentry, Jr., Spears, Moore, Rebman & Williams, Chattanooga, TN, Albert H. Parnell, Warner S. Fox, Dennis J. Manganiello, Hawkins & Parnell, Atlanta, GA, for GAF Corporation.

James W. Gentry, Jr., Spears, Moore, Rebman & Williams, Chattanooga, TN, for International Specialty Products, Inc., GAF Building Materials Corporation, GAF Chemical Corp., Perth, Inc., Merick, Inc., ISP (Puerto Rico) Inc.

### *MEMORANDUM*

COLLIER, District Judge.

Before the Court are two motions filed by Defendant GAF Corporation ("GAF"): (1) Motion Addressing Retroactive Application of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (Court File No. 148); and (2) Motion for Leave to Amend Final Pretrial Order to add a defense based on the Commerce Clause of the United States Constitution (Court File No. 140). The Court interprets GAF's motion addressing retroactivity as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

GAF and Plaintiff Nova Chemicals, Inc. ("Nova") have thoroughly briefed these issues. *See* Court File Nos. 149, 152, 154, 157 (retroactivity) and Court File Nos. 147, 150, 151, 153 (Commerce Clause). For the reasons stated below, the Court will **DENY** GAF's motion to dismiss and will **GRANT** GAF's motion to add a Commerce Clause defense. Because the parties have submitted excellent and detailed briefs regarding the

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Prior to 1970, GAF began operating a latex manufacturing plant and a chemical compounding plant on a seventy-four acre site ("the Site") located in Chattanooga, Tennessee. GAF used several ponds on the Site as part of a treatment system for effluent from the plants (Court File No. 32, ¶ 16).

On December 1, 1980, GAF sold the Site to Polysar, Inc. (First Amended Complaint, Court File No. 18, ¶ 20), which later became Novacor Chemicals, Inc. In March 1996, Novacor changed its name to Nova Chemicals, Inc.

According to Nova, GAF's operations at the site resulted in the release of hazardous substances into the ground, groundwater, and ponds. Nova further alleges it has incurred response costs associated with remediating the Site. Thus, Nova filed this action against GAF pursuant to § 107 of CERCLA, seeking to recover those response costs (First Amended Complaint, Court File No. 18, ¶¶ 33–44).

GAF requested leave to amend the final pretrial order to add two additional defenses based on the recent decision in *United States v. Olin Corp.*, 927 F.Supp. 1502 (S.D.Ala. 1996): (1) Congress did not intend the liability provisions of CERCLA to be applied retroactively; and (2) the application of CERCLA in this case violates the Commerce Clause of the United States Constitution (Court File No. 140). On August 15, 1996, United States Magistrate John Y. Powers granted GAF's motion to add the retroactivity defense and reserved judgment on the Commerce Clause defense (Court File No. 146). Judge Powers established a briefing schedule allowing GAF to file a dispositive motion regarding retroactivity and a further brief detailing the proposed Commerce Clause defense. The parties responded with extensive briefs on both issues.

## II. *DISCUSSION*

*Olin* was decided on May 20, 1996. In *Olin*, Judge Hand undertook an extensive analysis of CERCLA. In an exhaustive opinion, he concluded CERCLA could not be given retroactive application based upon the recently decided *Landgraf v. USI Film Prods, Inc.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In Judge Hand's opinion, *Landgraf* required a new analysis of retroactivity and when such analysis was conducted, CERCLA could not be applied retroactively. Judge Hand also considered CERCLA in light of *United States v. Lopez*, — U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and decided CERCLA exceeded Congress' power under the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3.

*Olin* was the first case decided after *Landgraf* and *Lopez* which held that CERCLA is not retroactive and violates the Commerce clause. (It is also the only case rendering this holding thus far.)

Based on the *Olin* decision, GAF raised new defenses that likely could not reasonably have been anticipated prior to *Olin*. The Court now addresses each argument in turn.

### A. *Motion to Dismiss Based on Retroactivity*

Retroactivity is an issue because any conduct on the part of GAF giving rise to liability occurred prior to the enactment of CERCLA. Although a majority of courts found CERCLA retroactive prior to the Supreme Court's decision in *Landgraf*, GAF argues that *Landgraf* altered the retroactivity analysis enough to compel a different conclusion (Court File No. 149). In essence, GAF contends that the *Olin* Court correctly applied *Landgraf* in deciding that CERCLA is not retroactive. Nova counters, "*Landgraf* retroactivity analysis is substantially no different than the analysis performed in the numerous pre-*Landgraf* cases that applied

CERCLA retroactively" (Court File No. 152, p. 2).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller*, 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

**1.** *CERCLA Retroactivity: A Review of the Legal Background.* Although the *Olin* Court recognized that all pre-*Landgraf* decisions found CERCLA retroactive, 927 F.Supp. at 1507, the court maintained that *Landgraf* "demolish[ed] the interpretive premises on which prior cases ... concluded CERCLA is retroactive." *Id.* at 1508. Because GAF's argument is based on *Olin*, the Court will consider the retroactivity of CERCLA in light of *Landgraf*.[1] Accordingly, resolution of the retroactivity issue requires a general knowledge of CERCLA's

---

**1.** Obviously, this Court is not constrained by *Olin*, which was rendered by a district court in the Eleventh Circuit. Moreover, the Sixth Circuit has described *Landgraf* as a reiteration of past principles, not a radical reformulation of the test for retroactivity. *See James Cable Partners, L.P. v. City of Jamestown, Tennessee*, 43 F.3d 277, 279 (6th Cir.1995); *accord Nevada v. United States*, 925 F.Supp. 691, 693 (D.Nev.1996) (noting "*Landgraf* did not set forth a new rule of law regarding retroactive application of legislation" but instead clarified the Supreme Court's decisions in *Bradley* and *Thorpe*). Nevertheless, the Court will consider the retroactivity of CERCLA within the *Landgraf* framework.

purpose and liability provisions, as well as an understanding of *Landgraf* and *Olin.*

**a. *CERCLA.*** During the term of the 96th Congress, 1979–1980, "current events focused attention on the cleanup of dumps containing toxic wastes."[2] The discovery of several inactive hazardous waste sites, such as "Love Canal"[3] and "Valley of the Drums,"[4] lead to the enactment of CERCLA on December 11, 1980. The express purpose of CERCLA is "[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980).

CERCLA pursues this goal through the following liability provision:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607 (1995).

This provision creates two major forms of liability: response costs and natural resource damages. Although CERCLA is silent with regard to the retroactivity of response costs, section 107(f)(1) expressly states that natural resource damages which occurred prior to enactment of CERCLA are not recoverable.

**b. *Landgraf.*** GAF argues the *Olin* court properly considered *Landgraf* to work a substantial change in the determination of retroactivity of statutes. For this reason, some discussion of *Landgraf* is necessary.

With respect to Title VII actions, section 102 of the Civil Rights Act of 1991 created a right to recover compensatory and punitive damages, as well as a right to a jury trial if such damages are sought. *Landgraf,* 511 U.S. at —, 114 S.Ct. at 1488. Prior to the Act, Title VII only authorized recovery of backpay. The *Landgraf* Court considered "whether these provisions apply to a Title

---

**2.** Environment and Natural Resources Policy Division, Library of Congress, *Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund),* vol. 1, at v (1983) (hereinafter *"Legislative History"*).

**3.** Between 1947 and 1972, Hooker Chemical Company buried up to 3,700 tons of waste containing dioxin, a deadly chemical, in an abandoned canal in Niagara County, New York. S.Rep. No. 96–848 (1980), at 9, *reprinted in Leg-*

*islative History,* at 316. When the state of New York discovered severe health problems among Love Canal residents, President Carter declared a federal emergency, and the residents were evacuated. *Id.*

**4.** Near Louisville, Kentucky, the EPA discovered 17,000 drums on a seven acre site. S.Rep. No. 848, at 4, *reprinted in Legislative History,* at 311. Six thousand of those drums were releasing toxic chemicals. *Id.*

VII case that was pending on appeal when the statute was enacted." *Id.*

In reaching its decision, the Court resolved the "apparent tension" between two statutory maxims the Court had applied in previous cases. *Id.* at —, 114 S.Ct. at 1496. Under the first maxim, "a court is to apply the law in effect at the time it renders its decision." *Id.* (citing *Bradley v. Richmond School Bd.,* 416 U.S. 696, 711–12, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). According to the second maxim, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* (citing *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)). Applying the following test, the Court determined that § 102 should not be applied retroactively:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at —, 114 S.Ct. at 1505. According to the Court, "[r]equiring clear intent assures that Congress itself has affirmatively consid-

ered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* at —, 114 S.Ct. at 1501.

The Court first noted that Congress had given no express "guiding instructions" regarding the retroactivity of § 102. *Id.* at —, 114 S.Ct. at 1505. Next, the Court found that § 102 would have retroactive effect because it would attach new legal burdens to past conduct and therefore should "not apply to events antedating its enactment in the absence of clear congressional intent."[5] *Id.* at — ——, 114 S.Ct. at 1505–1506. Finding no clear evidence of congressional intent that § 102 apply retroactively, the Court ultimately concluded, "Section 102 is plainly not the sort of provision that *must* be understood to operate retroactively because a contrary reading would render it ineffective." *Id.* at —, 114 S.Ct. at 1508. The Court noted that § 102's purpose of "giv[ing] managers an added incentive to take preventive measures to ward off discriminatory conduct ... *before* it occurs ... [would not be] served by applying the regime to preenactment conduct." *Id.* at — n. 35, 114 S.Ct. at 1506 n. 35.

**c. *Olin.*** The *Olin* Court found pre-*Landgraf* decisions declaring CERCLA retroactive "no longer tenable" because they failed to properly apply the presumption against retroactivity. 927 F.Supp. at 1509. Thus, the court applied the *Landgraf* test and concluded that CERCLA is not retroactive.[6] First, the court determined that use of the past tense in CERCLA's liability provisions is not enough to overcome the presumption against retroactivity. *Id.* at 1513.

---

**5.** The Court considered the jury trial right a "procedural change ... that would ordinarily govern in trials conducted after its effective date." *Id.* at —, 114 S.Ct. at 1505. However, because the jury trial option is available only if the claimant seeks compensatory or punitive damages, the Court concluded it "must stand or fall with the attached damages provisions." *Id.*

**6.** The *Olin* Court may have reacted against the rigid nature of the EPA's proposed consent decree. After noting that the EPA denied Olin's request to proceed under the supervision of the Alabama Department of Environmental Management, the court stated:

> This is not an action in which anyone is trying to avoid a responsibility to the environment; Olin has agreed to perform the proposed remedial actions called for in the consent decree. The fact that Olin, despite its reservations about the fairness and even legality of the proposed consent decree, originally went along with the EPA is a vivid testament to the powerlessness felt by this citizen when forced to comply with various directives ordered by our administrative state.

*Id.* at 1506 n. 17.

Next, the court found that Congress deliberately left the question of retroactivity open because CERCLA was the product of a delicate compromise; therefore, "the legislative history lacks the clear congressional intent to make CERCLA liability retroactive." *Id.* at 1515–16. The court concluded that CERCLA does not have to be retroactive to be effective because, "[i]nsofar as pre-enactment releases are concerned, the purpose of CERCLA can be covered through the Superfund." *Id.* at 1518.

As stated earlier, no other Court has agreed with *Olin* as of this opinion.

■ **2. Retroactivity Analysis.** Because the Sixth Circuit has not directly addressed the retroactivity of CERCLA since the Supreme Court decided *Landgraf,* the Court will consider CERCLA's retroactivity under the *Landgraf* framework.[7] It is clear that CERCLA does not expressly provide for retroactive application and that CERCLA would have retroactive effect in this case. Imposing CERCLA liability on GAF for pre-1980 acts would certainly increase GAF's liability for past conduct. Thus, the essential issue is whether the traditional presumption against retroactivity is overcome by clear congressional intent favoring retroactivity. In evaluating the intent of Congress, the Court will examine CERCLA's language, structure, purpose, and legislative history.

The language and structure of CERCLA reveal that Congress intended the Act to operate retroactively. CERCLA's liability provisions are written in the past tense. *See Cooper,* 1996 WL 550128, at *9 (finding that use of past tense in § 107 "suggests that Congress intended for CERCLA liability to reach back before the enactment date"). Congress intended to impose liability on those who "owned or operated" a facility "at the time of [hazardous waste] disposal," § 107(2), "arranged for disposal or treatment" of hazardous waste, § 107(3), or "accepted" hazardous waste for transport, § 107(4).[8]

Additionally, as previously noted, CERCLA distinguishes between natural resource damages and response costs by expressly providing that the natural resource damage provision is prospective. This distinction gives rise to a negative inference that the response cost provision is both prospective and retrospective. Although a similar negative inference argument was rejected in *Landgraf,* the facts of *Landgraf* are distinguishable. In *Landgraf,* the Court refused to draw a negative inference from "prospective only" provisions that were a minor part of the statute. 511 U.S. at ——, 114 S.Ct. at 1493. In contrast, the natural resource damage provision of CERCLA plays a major role in the statutory scheme. *See Nevada,* 925 F.Supp. at 701–02 (distinguishing *Landgraf* and accepting negative inference argument because "the sections of CERCLA which create liability for response costs on the one hand, and damage to natural resources on the other, are hardly 'minor and narrow provisions' ").

Although the language and structure of CERCLA lend weight to a conclusion that CERCLA is retroactive, these factors are not determinative. The clearest expression of congressional intent to make CERCLA ret-

---

7. It is helpful to consider the context in which *Landgraf* was rendered. The issue of retroactivity arose in *Landgraf* because the Civil Rights Act of 1991 was enacted while the case was on appeal. The present facts are not as compelling. *See Cooper Indus. v. Agway, Inc.,* 1996 WL 550128, at *8 (N.D.N.Y. Sept. 23, 1996) (not reported in F.Supp.) (finding that "the policy" against retroactive application of a statute absent an express direction of Congress is clearly stronger when asserted in the context of a statutory change occurring after the commencement of a lawsuit). CERCLA was enacted in 1980, and Nova Chemical did not file suit until 1993. *But see Olin,* 927 F.Supp. at 1517 (finding threat of retroactive CERCLA liability more egregious than compensatory damages remedy sought in *Landgraf* because "liability under CERCLA would require compensation for actions which when taken violated no federal or state law").

8. GAF argues that use of the past tense in § 107 does not require retroactive application because § 107 "impose[s] liability on persons that owned or operated a facility, or arranged for disposal at a facility, prior to the release of hazardous substances at the facility, *not prior to the enactment of CERCLA* " (Court File No. 149, p. 6 n. 3). Given the express congressional concern over inactive hazardous waste sites which prompted the enactment of CERCLA, the Court finds GAF's argument unpersuasive.

roactive is revealed in CERCLA's purpose and legislative history.[9] The impetus for CERCLA was the desire to clean up existing hazardous waste sites.[10] This motivation is revealed in repeated references to "abandoned" or "inactive" waste sites in CERCLA's legislative history. *See generally* H.R.Rep. No. 96–1016 (1980), *reprinted in Legislative History*, vol. II, at 47; S.Rep. No. 848, *reprinted in Legislative History*, vol. I, at 305; *see also Nevada*, 925 F.Supp. at 695 (conducting *de novo* review of legislative history, noting numerous references to abandoned or inactive sites, and concluding "clear intent of Congress was to provide for retroactive application of the CERCLA liability provisions").

Moreover, CERCLA was designed to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes. S.Rep. No. 848, at 13, *reprinted in Legislative History*, vol. I, at 320; H.R.Rep. No. 1016, at 33, *reprinted in Legislative History*, vol. II, at 64.

Finally, CERCLA was intended to fill in the gaps of the Resource Conservation and Recovery Act ("RCRA"). H.R.Rep. No. 1016, at 22, *reprinted in Legislative History*, vol. II, at 53. RCRA, which is a cradle to grave tracking mechanism for hazardous waste, operates prospectively. When President Carter signed CERCLA into law, Representative Florio remarked, "Prospectively we have … [RCRA], and therefore we should have no new Love Canals being created. And [CERCLA], of course, is the second part, which is to go back and clean up what, unfortunately, has been done over the last number of years." *Legislative History*, vol. I, at 49.

Thus, unlike the damages provision at issue in *Landgraf*, CERCLA must be retroactive in order to be effective. Only retroactive application can fulfill the congressional goal of cleaning up waste sites that were created in the past and charging the cost of that cleanup to those responsible for the hazardous wastes. *See Walls v. Waste Resource Corp.*, 823 F.2d 977, 980 (6th Cir.1987) (recognizing two-fold purpose of CERCLA); *Cooper*, 1996 WL 550128, at *9 (finding that Congress, by discussing "inactive" and "abandoned sites," sent an "express message that CERCLA would seek to impose liability and a response cost burden on the responsible parties").

GAF suggests that CERCLA does not have to be retroactive to be effective because Superfund can address pre-enactment contamination. This Court disagrees. When CERCLA was enacted, Superfund was intended "to finance response action where a liable party does not clean up, cannot be found, or cannot pay the costs of cleanup and compensation." S.Rep. No. 848, at 13, *reprinted in* Legislative History, at 320.[11]

---

9. CERCLA was enacted during the last days of the term of the 96th Congress. The leading House Bill was H.R. 7020, and the leading Senate Bill was S. 1480. After several amendments to S. 1480, its provisions were substituted for those of H.R. 7020, and the resulting bill was returned to the House on November 24, 1980.

On December 2, 1980, Senators Randolph and Stafford sent a letter to Representative Florio indicating that S. 1480 was a "delicate balancing of interests" and that it would "be impossible to pass the bill again, even unchanged." *Legislative History*, vol. I, at 774–75. The House agreed to the Senate amendments on December 3, and the President signed CERCLA into law on December 11.

Although this process produced no conference report, the Court has conducted a *de novo* review of CERCLA's legislative history to determine if Congress expressed clear intent favoring retroactivity.

10. The preambles to CERCLA and its predecessor House and Senate bills reflect this impetus.

Pub.L. No. 96–510, 94 Stat. 2767, *reprinted in Legislative History*, vol. I, at 1; H.R. 7020, at 1, *reprinted Legislative History*, vol. II, at 3; S. 1480, at 1, *reprinted in Legislative History*, vol. I, at 462; *see also United States v. R.W. Meyer*, 889 F.2d 1497, 1500 (6th Cir.1989) (recognizing that CERCLA was enacted "to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites"), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990).

11. As initially reported, S. 1480 called for the creation of a $4.1 billion Superfund. *Legislative History*, vol. I, at vii. However, Amendment No. 2631 cut the fund to $1.6 billion. *Id.* In discussing Amendment No. 2631, Senator Randolph noted that the original $4.1 billion fund was intended to "clean up and mitigate damages where a liable party does not clean up or cannot be found." *Legislative History*, vol. I, at 685; *see also* H.R.Rep. No. 1016, *reprinted in Legislative History*, vol. II, at 64 (describing H.R. 7020 as

Therefore, contrary to GAF's suggestion, CERCLA must be retroactive to effectuate the goal of cleaning up inactive sites by imposing liability on the parties responsible for the hazardous waste.[12]

Based upon the foregoing, the Court does not agree that CERCLA cannot be applied retroactively. Accordingly, the Court will **DENY** GAF's motion to dismiss.

### B. *Commerce Clause*

■ Again relying almost exclusively on *Olin*, GAF argues that application of CERCLA in this case would violate the Commerce Clause of the United States Constitution (Court File No. 147). Applying the reasoning of *United States v. Lopez*, — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the *Olin* Court held that application of CERCLA to the facts of that case violated the Commerce Clause. 927 F.Supp. at 1533.[13] Several courts have also disagreed with this aspect of the *Olin* Court's conclusion. *United States v. Alcan Aluminum Corp.*, 1996 WL 637559 (N.D.N.Y. Oct. 28, 1996) (not reported in F.Supp.); *Cooper*, 1996 WL 550128; *United States v. NL Indus.*, 936 F.Supp. 545 (S.D.Ill.1996). This Court joins those courts in their disagreement and holds that CERCLA does not violate the Commerce Clause.

The Sixth Circuit recently summarized *Lopez*:

In *Lopez*, the Supreme Court invalidated the Gun–Free School Zones Act, 18 U.S.C. § 922(q). Canvassing past Commerce Clause decisions, the Court identified three categories of activities that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *Lopez*, — U.S. at — – —, 115 S.Ct. at 1629–30 (citation omitted). The Court concluded that § 922(q), classified in the third category, failed to substantially affect interstate commerce.

*United States v. Wall*, 92 F.3d 1444, 1446 (6th Cir.1996) (footnote omitted); *see also United States v. McHenry*, 97 F.3d 125 (6th Cir.1996) (discussing *Lopez* categories).

At a minimum, CERCLA passes muster under the second category. *NL Indus.*, 936 F.Supp. at 557–58. With regard to "things in interstate commerce," CERCLA protects groundwater, 42 U.S.C. § 9618, which the Supreme Court has expressly recognized as an article of commerce. *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 951–55, 102 S.Ct. 3456, 3462–63, 73 L.Ed.2d 1254 (1982). GAF admits that groundwater contamination is at issue in this case. *See* Court File No. 147, p. 9 ("[T]he groundwater contamination at the site is totally confined to the Site boundaries...."). Despite GAF's vehement contention that any contamination is purely local, CERCLA can constitutionally regulate activities that pollute groundwater, "even

providing mechanism for Superfund to promptly recover response costs from persons responsible for the hazardous site).

12. GAF also argues there is no clear expression of congressional intent favoring retroactivity because Congress "agreed to disagree" on the issue of retroactivity. In support of this argument, GAF cites the following remarks of Senators Domenici, Bentsen, and Baker as part of S.Rep. No. 848: "The issue of applying the standards retroactively remains a troubling one. While the Committee accepted a Domenici amendment to limit the scope of the retroactivity, the issue remains unresolved" (Court File No. 154, pp. 7–8). GAF fails to note, however, that these remarks are the "Additional Views of Senators Domenici, Bentsen, and Baker" which accompa-

ny S.Rep. No. 848. *Legislative History*, vol. I, at 426. The Senators note, "[W]e intend to further evaluate the bill in light of *our concerns*." *Id.* at 429 (emphasis added). Given the context of the Senators' statement, the Court finds GAF's argument unpersuasive.

13. Because the site at issue was no longer active, the *Olin* court found that the clean up issue was essentially a local real property matter, not an "economic activity." 927 F.Supp. at 1532–33. The court further found "that the law regulating real property has been traditionally a local matter falling under the police power of the states." *Id.* at 1533. Thus, the court concluded that applying CERCLA to the defendant would violate the Commerce Clause. *Id.*

though the threat may come only from intrastate activities." *Lopez*, at —, 115 S.Ct. at 1629; *see also NL Indus.*, 936 F.Supp. at 558 (finding that CERCLA protects groundwater and surface water, which are integral parts of interstate commerce). The *Olin* Court did not consider whether CERCLA fits within the second category. 927 F.Supp. at 1531.

The Court also notes that CERCLA fits within the third category enumerated by *Lopez* because it regulates economic activity that substantially affects interstate commerce.[14] Contrary to GAF's assertion, "[t]he denomination of an activity as a 'local' or 'intrastate' activity does not solve the question whether Congress may regulate it under the Commerce Clause." *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 280, 101 S.Ct. 2352, 2362, 69 L.Ed.2d 1 (1981). The Supreme Court has recognized that "the Commerce Clause [is] broad enough to permit congressional regulation of activities causing air or water pollution, or other environmental hazards that may have effects in more than one State." *Id.* at 282, 101 S.Ct. at 2363.

The release of hazardous wastes and the remediation of hazardous waste sites are clearly economic activities. Here, the alleged contamination was a byproduct of latex manufacturing and chemical compounding. These fit squarely within any reasonable definition of commerce. Furthermore, the aggregate effect of releasing hazardous waste undeniably impacts interstate commerce. *See Lopez*, at —, 115 S.Ct. at 1628 (discussing *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942)). As one court noted, "[p]ollution of surface water and groundwater affects the fishing industry, agriculture, livestock production, recreation,

and domestic and industrial water supplies." *NL Indus.*, 936 F.Supp. at 563.

Additionally, CERCLA's legislative history provides a rational basis for finding that improper hazardous waste disposal substantially affects interstate commerce. The Senate noted that releases of hazardous waste have "resulted in the contamination of drinking water and long-term contamination of wells, in massive fish kills, air pollution, loss of livestock and food products to contaminated drinking water and feed, and the destruction of wildlife." S.Rep. No. 848, at 5, *reprinted in Legislative History*, vol. I, at 312. The Senate further noted that "[s]pills have taken place because of transportation accidents involving pipelines, trucks, rail cars, and barges or tankers, and also non-transportation facilities such as storage tanks, holding lagoons and chemical processing plants." *Id.* Finally, the Senate noted that "[p]ortions of Lakes Ontario and Erie have been closed to commercial fishing because of chemical contamination." *Id.* at 6.

Accordingly, the Court finds: (1) CERCLA is designed to regulate and protect things in interstate commerce; and (2) CERCLA regulates economic activity that Congress could rationally have concluded has a substantial effect on interstate commerce.

### III. CONCLUSION

This Court respectfully disagrees with the *Olin* court's holdings. The language, structure, purpose, and legislative history of CERCLA evince clear congressional intent favoring retroactive application. In addition, CERCLA does not violate the Commerce Clause when applied to the facts of this case

---

**14.** The *Olin* Court misconstrued the third *Lopez* category in two respects. First, *Olin* found that *Lopez* requires a statute to contain a "jurisdictional element which would ensure, through case-by-case inquiry that the [statute] in question affects interstate commerce." 927 F.Supp. at 1532. The Sixth Circuit has specifically rejected this aspect of *Olin*. *Wall*, 92 F.3d at 1449 n. 11.

However, the *Olin* Court also determined that, assuming CERCLA had a jurisdictional provision, "the activity in question ha[d] virtually no effect on interstate commerce" because the con-

taminants were locally contained. 927 F.Supp. at 1533. This focus on the intrastate nature of the pollution is also misplaced. *NL Indus.*, 936 F.Supp. at 561. The *Lopez* Court noted, "[W]e have upheld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce." — U.S. at —, 115 S.Ct. at 1630. Thus, GAF's argument that there is no impact on interstate commerce in this particular case because the alleged hazardous waste is locally contained also fails.

because groundwater, a recognized article of commerce, is at issue.

An Order will enter.

### ORDER

As indicated in the accompanying memorandum, the Court holds: (1) CERCLA is retroactive; and (2) CERCLA does not violate the Commerce Clause. Therefore, Defendant GAF's motion to dismiss based on retroactivity is **DENIED.** Although GAF's motion to add a defense based on the Commerce Clause is **GRANTED,** the Court finds that Congress did not exceed its Commerce Clause power in enacting CERCLA.

**SO ORDERED.**