**CONTINENTAL TITLE COMPANY,
Plaintiff,**

v.

**The PEOPLES GAS LIGHT AND COKE
COMPANY, Defendant.**

No. 96 C 3257.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1997.

**894**

Erica Lynn Dolgin, Sheldon A. Zabel, Mary A.M. Walters, Schiff, Hardin & Waite, Chicago, IL, for Continental Title Co.

James H. Schink, Lise Taylor Spacapan, Diane Katharyne Moore, Kirkland & Ellis, Chicago, IL, for Peoples Gas Light & Coke Co.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Continental Title Company ("Continental") brings a three-count Complaint against Defendant The Peoples Gas Light and Coke Company ("Peoples Gas") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the common law of the State of Illinois governing restitution. This action arises from the release of hazardous substances at a site presently owned by Continental and formerly owned by Peoples Gas, who is allegedly responsible for the release of hazardous sub-

stances. Peoples Gas owned and operated a manufactured gas plant at the site from approximately 1894 until 1930. CERCLA was enacted in 1980. Plaintiff seeks to recover its necessary response costs pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and concedes that application of CERCLA to Peoples Gas would have a retroactive effect. Presently before the Court is Defendant's Motion to Dismiss on the grounds that (1) Section 107(a) of CERCLA does not apply retroactively and (2) retroactive application against Peoples Gas would deprive it of due process.

## ANALYSIS

### I. RETROACTIVITY

■ This Court finds that Section 107(a) of CERCLA applies retroactively and, in doing so, follows the highly persuasive analyses in *Ninth Avenue Remedial Group v. Allis Chalmers,* 946 F.Supp. 651 (N.D.Ind.1996), *Nova Chemicals, Inc. v. GAF Corp.,* 945 F.Supp. 1098 (E.D.Tenn.1996), and *State of Nevada v. United States,* 925 F.Supp. 691 (D.Nev.1996), as well every other court to consider the issue, with one recent exception, *United States v. Olin Corp.,* 927 F.Supp. 1502 (S.D.Ala.1996). Significantly, as this Court was in the process of entering this Opinion, the Eleventh Circuit reversed the district court's decision in *U.S. v. Olin,* 107 F.3d 1506 (11th Cir.1997). Accordingly, this Opinion does not otherwise reference the Eleventh Circuit's decision.

Courts have long viewed Section 107(a) as retroactive. *See, e.g., O'Neil v. Picillo,* 883 F.2d 176 (1st Cir.1989), *cert. denied sub nom. American Cyanamid Co. v. O'Neil,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988); *United States v. Northeastern Pharm. & Chem. Co.,* 810 F.2d 726 (8th Cir.1986). Indeed, the Seventh Circuit recently rejected a due process attack on a lengthy retroactive provision of the Coal Industry Retiree Health Benefit Act of 1992 because "the proposition that the degree of retroactivity itself violates the Due Process Clause ... would ignore precedent upholding the unlimited retroactive reach of [CERC-

LA]." *Davon, Inc. v. Shalala,* 75 F.3d 1114, 1126 (7th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). However, the *Olin* court found that the Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) required it to disregard this well-established jurisprudence, finding that *Landgraf* "demolishe[d] the interpretive premises on which prior cases had concluded CERCLA is retroactive." 927 F.Supp. at 1508. While *Olin* has triggered a flurry of decisions on the issue, it has not acquired a following. On the contrary, every decision in *Olin*'s wake has found *Landgraf* to support the settled retroactivity of Section 107(a). *Ninth Avenue,* 946 F.Supp. 651 (N.D.Ind. 1996); *Nova,* 945 F.Supp. 1098 (E.D.Tenn. 1996); *United States v. Alcan Aluminum Corp.,* 1996 WL 637559 (N.D.N.Y. Oct.28, 1996); *Cooper Indus. Inc. v. Agway Inc.,* 1996 WL 550128 (N.D.N.Y. 1996); *Gould v. A & M Battery & Tire Service,* 933 F.Supp. 431 (M.D.Pa.1996); *Nevada,* 925 F.Supp. 691 (D.Nev.1996).

### A. *Landgraf* Standard

In deciding whether the right to recover compensatory and punitive damages created by the Civil Rights Act of 1991 applies to conduct that occurred, and to cases that were filed, before the Act's effective date, the *Landgraf* Court explained that the "first task [of a court faced with a retroactivity inquiry] is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." 511 U.S. at 280, 114 S.Ct. at 1505.

Section 107(a) of CERCLA provides in pertinent part:

(2) any person who at the time of disposal of any hazardous substance owned or oper-

ated any facility at which such hazardous substances were disposed of,

. . . .

(4) . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

42 U.S.C. § 9607(a). The statute does not expressly prescribe the reach of Section 107(a), except that "There shall be no recovery under the authority of subparagraph (C) of subsection (a) of this section where such damages [*i.e.,* damages for injury to, destruction of, or loss of natural resources] and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980." 42 U.S.C. § 9607(f). Likewise, as agreed to by the parties, application of the statute to Peoples Gas would have a retroactive effect, in answer to the second step of the Supreme Court's inquiry. Finally, the Supreme Court explained that "[i]f the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Thus, the only task left for this Court is to determine whether clear congressional intent exists as to retroactive liability for response costs. Plaintiff submits that Congress' intent is clearly evidenced by the statutory language and by the legislative history.

### B. CERCLA's Text

As the Court alluded to above, in Section 107(f)[1] Congress explicitly prohibited retro-

---

**1.** The lengthy Section 107 is entitled "Liability." Subsection (a) sets out the "covered persons; scope; recoverable costs and damages; interest rate; 'comparable maturity' date," with the recoverable costs and damages set out in its subparagraphs. Four types exist, indicated by subparagraph: (A) "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe"; (B) "any other

necessary costs of response incurred by any other person"; (C) "damages for injury to, destruction of, or loss of natural resources"; and (D) "the costs of any health assessment or health effects study." Subsection (f)(1), entitled "Natural resources liability," further delineates the liability that attaches to natural resources damages, as its name indicates. Its final sentence express-

active recovery of natural resources damages when it provided "There shall be no recovery under the authority of subparagraph (C) of subsection (a) of this section where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980," the date of enactment. Thus, argues Plaintiff, Section 107(f) creates a negative implication that Congress intended recovery under the authority of the other subparagraphs of subsection (a) to apply retroactively, because Section 107(f) would be superfluous if Congress intended the other subparagraphs to be prospective only as well. As the Supreme Court explained, the time-honored canon "*expressio unius est exclusio alterius*" expresses this logic. *Landgraf*, 511 U.S. at 259–61, 114 S.Ct. at 1494.

Defendant counters that under *Landgraf* "a negative inference can never be the basis for clear intent." (Reply at 6). The Court does not agree. Rather, in rejecting an analogous argument, the Supreme Court stated that the argument "has some force," but found that the provisions at issue did not carry a negative implication. Specifically, like Section 107(a) of CERCLA, Section 102 of the Civil Rights Act of 1991 ("the Act"), whose retroactivity was at issue in *Landgraf*, does not expressly indicate whether it applies retroactively. However, two other sections of the Act expressly reject retroactivity with respect to specific situations: (1) the extension of liability to overseas employers, § 109(c), and (2) "any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983," meaning a single disparate impact case against the Wards Cove Packing Company, § 402(b). Additionally, Section 402(a) of the Act states: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment."

The Supreme Court prefaced its analysis by noting that a negative inference based upon those provisions "places an extraordinary weight on two comparatively minor and narrow provisions in a long and complex statute." *Id.* at 257–59, 114 S.Ct. at 1493. The Court found that "it would be surprising for Congress to have chosen to resolve [the retroactivity] question through negative inferences drawn from two provisions of quite limited effect." This conclusion was partly informed by the prominent and specific retroactivity provisions in a similar bill that Congress was unable to pass over the President's veto based upon "the bill's 'unfair retroactivity rules.' " *Id.* at 256, 114 S.Ct. at 1492.[2]

The present case is in sharp contrast, as the prospective provision—liability for damages to natural resources—and the provision at issue—liability for response costs—constitute the entirety of the liability scheme that was enacted and, thus, the inferential weight, self-contained within one section of the act, is born by one-half of the liability scheme set out in that section.[3] Moreover, the liability section of which they are a part is a major provision of CERCLA, and "the [prospective] natural resource damages provision plays a major role in the statutory scheme." *Nova*, 945 F.Supp. at 1103; *see, e.g., Ninth Avenue*, 946 F.Supp. at 659; *Nevada*, 925 F.Supp. at 701–02. Thus, the prospective provision from which Plaintiff asks the Court to draw a negative inference is capable of bearing this weight. Further, unlike the thin reed in *Landgraf* that collapsed under its legislative history, the negative implication of Section 107(a)(C) & (f) is reinforced by CERCLA's legislative history.

## C. CERCLA's Legislative History

At first blush, CERCLA's legislative history appears analogous to that in *Landgraf*

---

ly declares natural resources liability prospective only.

**2.** Significantly, the Supreme Court explained that "The omission of the elaborate retroactivity provision of the 1990 bill ... is not dispositive because it does not tell us precisely where the compromise was struck in the 1991 Act." *Id.* at 256, 114 S.Ct. at 1492.

**3.** In 1986, Congress amended Section 107 to include liability for "the costs of any health assessment or health effects study carried out under section 9604(i) of this title." 42 U.S.C. § 9607(a)(D).

because, as Peoples Gas emphasizes, one of the precursor bills to CERCLA contained an express retroactivity provision that was not included in the enacted bill. H.R. 7020 § 5(a), 96th Cong., 2d Sess. (1980), *reprinted in* 2 Staff of Senate Comm. on Environ. & Pub. Works, 97th Cong., 2d Sess., A Legislative History of the Comprehensive Environmental Response, Compensation, & Liability Act of 1980 (Superfund), Pub.L. No. 96–510, at 42 (Comm.Print 1983) (Hereinafter "CERCLA Leg.History"). Thus, Defendant argues that "[w]hile the legislative history offers no explanation for the dropping of this section, the obvious reason for its deletion is that there was not enough support for retroactivity." (Mem. at 7). Specifically, H.R. 7020 § 5(a) (§ 3072), as introduced on April 2, 1980, provided that liability for releases of hazardous waste applied "without regard to whether or not such releases occurred before, or occur on or after, the date of enactment of the" Act. As introduced, H.R. 7020 § 5(a) (§ 3071) imposed strict joint and several liability for the costs of removal and damages for personal injury, injury to real or personal property, and economic loss resulting from the release, including damages with respect to natural resources. The bill was referred to committee and eventually reported without § 3072 and without § 3701's provision of liability for damages, apparently including damages to natural resources. Accordingly, as passed by the House, H.R. 7020 did not contain a retroactivity provision. However, H.R. 7020 was sent to the Senate. who instead passed S. 1480 and returned it to the House with a letter indicating that any amendments by the House "will kill it." 1 CERCLA Leg.History, at 774–75. The House substituted the Senate bill for the language of its own bill, apparently because of a requirement that appropriations measures originate in the House, and passed the resulting bill. *Nevada*, 925 F.Supp. at 694 n. 3. The President signed it into law on December 11, 1980. Thus, the deletion of H.R. 7020's retroactivity provision is not particularly probative, as CERCLA derived from the Senate bill.

When introduced in July 1979, S. 1480 included a comprehensive liability section imposing strict joint and several liability for response costs and numerous types of damages (economic loss, personal injury, damages to natural resources and property, loss of income, and out-of-pocket medical and burial expenses), but did not include any provisions regarding retroactivity. *See* S. 1480, 96th Cong., 2d Sess., § 4, *reprinted in* 1 CERCLA Leg.History, at 169–71. The bill was then referred to the Committee on Environment and Public Works, where Senator Domenici expressed concern over its retroactive reach. *United States v. Shell Oil*, 605 F.Supp. 1064, 1077 (D.Colo.1985) (citing Transcript of Mark–Up Session of S. 1480, June 26–27, 1980). The Committee accepted Senator Domenici's modifying amendment, § 4(n), which decreed the reach of all damages provisions, precluding retroactive application of some types and essentially limiting the retroactive reach of all others to January 1, 1977,[4] but did not expressly address the reach of response costs liability, and reported S. 1480 as such on July 11, 1980. S. 1480, 96th Cong., 2d Sess., § 4(n); *see* I CERCLA Leg.History, at 305, 344–45, 462, 499–501. The bill was also referred to the Committee on Finance, who reported S. 1480 with § 4(n) unchanged on November 18, 1980. 1 CERCLA Leg.History, at 462. However, S. 148 did not pass as reported. Rather, on November 24, 1980, among the lasts days of a lame-duck Congress, the Senate introduced Amendment No. 2631, "in the nature of substitute for S. 1480," which constitutes the compromise bill that was enacted as CERCLA. Cong.Rec., Nov. 24, 1980, § 14929–15009, *reprinted in* 1 CERCLA Leg.History, at 560–775.

Nevertheless, as the *Ninth Avenue* court aptly explained, "the liability provisions included in the final bill derived primarily from S. 1480, although the bill retained only those liability provisions on which there was consensus in Congress—response costs and natural resources damages. *See* Senate Amend. No. 2631, 96th Cong., 2d Sess. § 107, reprinted in 1 CERCLA Leg.History, at 603; *id.* at 685 (remarks by Sen. Ran-

---

**4.** Notably, to the extent § 4(n) imposed retroactive liability, it was achieved by negative implica-

tion. § 4(n)(2) & (3); 1 CERCLA Leg.History, at 344,499–500.

dolph during the debate held on Nov. 24, 1980); *id.* at 730 (remarks by Sen. Cohen during the CERCLA debate held on Nov 24, 1980). Like S. 1480, the amendment applied liability for natural resources only prospectively, but it included no limitation or express retroactivity provision with regards to response costs." *Ninth Avenue,* 946 F.Supp. at 661 n. 5. In other words, both Amendment 2631 (*i.e.,* Section 107 of CERCLA) and Section 4(n) of S. 1480 precluded pure retroactive liability for everything except response costs, without explicitly declaring whether liability for response costs is retroactive, but "everything except response costs" consists only of natural resources damages in Section 107, whereas it consists of economic loss, personal injury, damage to natural resources, loss of income, and out-of-pocket medical expenses in Section 4(n). Further, although Amendment 2631 was in the nature of a substitute of S. 1480, its Section 107 was clearly derived from Section 4 of S. 1480, as a side by side comparison reveals. For clarity and demonstration, the Court will reproduce the pertinent portions of S. 1480, as altered by Amendment 2631 and enacted as CERCLA, indicating deletions by strike out and additions in italics:

(a) ~~Except where the person otherwise liable under this subsection can prove that a discharge, release, or disposal was caused solely by an act of God or an act of war,~~[5] and notwithstanding any other provision or rule of law, *and subject only to the defenses Set forth in subsection (b) of this section—*

*(1)* ~~(i)~~ the owner of operator of a vessel or a facility,

*(2)* ~~(ii)~~ any person who at the time of disposal of any hazardous substance owned or operated any facility ~~or site~~ at which such hazardous substances ~~are~~ *were* disposed of,

*(3)* ~~(iii)~~ any person who by contract, agreement, or otherwise arranged for disposal, *or* treatment, *or arranged with a transporter for* transport for disposal or treatment ~~by any other party or entity,~~ of hazardous substances owned or possessed by such person, *by any other*

*party or entity,* at *any* facilit~~ies or sites~~ owned or operated by ~~such other~~ *another* party or entity and containing such hazardous substances, and

*(4)* ~~(iv)~~ any person who accepts *or accepted* any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which *there is a release, or a threatened release which causes the incurrence of response costs, of* a hazardous substance ~~is discharged, released, or disposed of, or from which any pollutant or contaminant is released resulting in action under section 3(c)(1) of this Act,~~ shall be ~~jointly, severally, and strictly~~ liable for—

~~(1)~~*(A)* all costs of removal or remedial action incurred by the United States Government or a State *not inconsistent with the national contingency plan,* ~~and~~

*(B)* any other *necessary* costs ~~or expenses~~ *of response* incurred by any *other* person ~~to remove a hazardous substance as the terms "remove" or "removal" are defined in section 311(a)(8) of the Clean Water Act~~ *consistent with the national contingency plan;* and

~~(2) all damages for economic loss or loss due to personal injury or loss of natural resources resulting from such a discharge, release, or disposal, including—~~

~~(A) any injury to, destruction of, or loss of any real or personal property, including relocation costs,~~

~~(B) any loss of use of real or personal property,~~

*(C) damages for* ~~any~~ injury to, destruction of, or loss of natural resources including the reasonable costs of assessing such injury. destruction, or loss *resulting from such a release.*

~~(D) any loss of use of any natural resources, without regard to the ownership or management of such resources,~~

~~(E) any loss of income or profits or impairment of earning capacity resulting from personal injury to or destruc-~~

---

5. The stricken portion was inserted into § 107(b), which sets out defenses.

~~tion of real or personal property or natural resources, without regard to the ownership of such property or resources,~~

~~(F) all out-of-pocket medical expenses, including rehabilitation costs or burial expenses, due to personal injury, and~~

~~(G) any direct or indirect loss of tax, royalty, rental, or net profits share revenue by the Federal Government or any State or political subdivision thereof, for a period of not to exceed one year.~~

Section(4)(b) of S. 1480, further addressing natural resources damages, became Section 107(f)(1) of both Amendment 2631 and CERCLA, with the latter adding, *inter alia*, the last sentence that allegedly contains the negative implication, namely, *There shall be no recovery under the authority of subparagraph (C) of subsection (a) of this is section where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980.* That sentence was imported from § 4(n), which was otherwise deleted from S. 1480. Again, for completeness, the Court will reproduce § 4(n) as altered by Amendment 2631, indicating deletions by strikeout and additions in italics.

*(f)* ~~(n)(1)~~ . . . . *There shall be no* ~~No person, including the (United States, the Fund, or any State) may~~ recovery under the authority of ~~this~~ *subparagraph (C) of subsection (a) of this* section ~~nor may any money in the Fund be used under section 6 of this Act for the payment of any claim, for damages specified under subsection (a)(2)(A), (B), (C), (D), (G), or (E) (other than for loss resulting from personal injury) of this section, nor may any money in the Fund be used under section 6(a)(1)(E) or (F) of this Act~~, where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before the enactment of this Act.

~~(2) No person (including the United States, the Fund, or any State) may recover under the authority of this section, nor may any money in the Fund be used under section 6 of this Act for the payment of any claim for damages specified under subsection (a)(2)(F) of this section, or under subsection (a)(2)(E) of this section (for loss of income or profits or impairment of earning capacity resulting from personal injury), where the exposure of the claimant to a release of a hazardous substance has occurred wholly prior to January 1, 1977, and the claimant has discovered or has knowledge of his injury or disease prior to such date.~~

~~(3) No person (including the United States, the Fund, or any State) may recover under the authority of this section for damages specified under subsection (a)(2)(F) of this section or under subsection (a)(2)(E) of this section (for loss of income or profits or impairment of earning capacity resulting from personal injury), where the exposure of the claimant to a release of a hazardous substance has occurred wholly prior to January 1, 1977, but the claimant has not discovered or had knowledge of his injury or disease until after such date.~~

~~(4) For the purposes of this subsection, the costs of temporary or permanent relocation of residences and provision of alternative water supplies shall be deemed costs of removal and not damages specified in subsection (a)(2)(A) of this section.~~[6]

~~(5) Nothing in this subsection shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or the costs of removal of such hazardous substance.~~

Clearly, the compromise was struck over the types of liability imposed, which dictated deletion of the corresponding portions of § 4(n). The lone remaining declaration of CERCLA's liability reach, precluding retroactive liability for damages to natural resources, was then logically imported into the subsection that elaborated on such damages: (f). Thus, this Court finds that Plaintiff properly relies upon the Senate Report ac-

---

**6.** This subsection was partially preserved in the definitions section. § 101(23) & (24).

companying S. 1480 as evidence of Congress' intent. *See, e.g., Nevada,* 925 F.Supp. at 694 n. 4. The Senate Report explains, in the section entitled "Liability": "The goal of assuring that those who caused chemical harm bear the costs of that harm is addressed in the reported legislation by the imposition of liability." S.Rep. No.96–848, at 13 (1980), *reprinted in* 1 CERCLA Leg.History, at 320. The Senate Report explicitly discusses the reach of CERCLA's liability provision, stating "Section 4(n) specifies how claims for certain damages occuring [sic] before the date of enactment will be handled under S.1480. Costs of removal (cleanup and containment) are not affected by this provision, nor are any damages associated with continuing releases." S.Rep. No.96–848, at 37 (1980), *reprinted in* 1 CERCLA Leg.History, at 344. The latter point is specified in 4(n)(5).

Defendant contends § 4(n)(3) creates a strong negative implication that prospectivity is the exception and retroactivity is the rule and its deletion therefore "is strong evidence that Congress intended only prospective application" (Mem. at 7) (citation omitted). The Court disagrees. To provide that another provision is "not affected" begs the question, as it merely mandates the status quo, without defining it: (1) if the status quo were understood to be a vacuum as to the reach of liability for response costs, the provision would preclude a negative inference; (2) if it were understood to be retroactivity, the provision would preclude the limitations on liability for damages from also limiting liability for response costs.[7] The Senate Report resolves the ambiguity, explaining that "Damages which are being repaired as part of a cleanup action under the Fund are not affected by this provision, and the Fund may recover for such cleanup expenditures." *Id.* In doing so, the Senate Report establishes that to be "not affected" is to be retroactive and that this assumption underlies the liability scheme. Therein lies the evidence of congressional intent; that the provision in whose context the assumption was discussed did not

survive does not diminish the force of this evidence. Indeed, the limitation that was not to affect response costs liability itself allowed retroactivity to January 1, 1977 in some instances, a date that "was chosen to assure that certain well-known hazardous substance disposal occurrences, such as Love Canal, would be covered by the liability scheme of S. 1480." *Id;* § 4(n)(2) & (3). The concern underlying § 4(n)(5) is further manifested in § 4(n)(4)'s provision that "for purposes of this subsection, the costs of temporary or permanent relocation of residences and provision of alternative water supplies shall be deemed costs of removal and not damages specified in subsection (a)(2)(A) of this section." The portion of this provision that was not mooted by deletion of (a)(2)(A) survived, as noted above. Moreover, the distinction between response costs and damages "was maintained in the final version of CERCLA." *Nevada,* 925 F.Supp. at 694.

The sum of this analysis is that the drafters of S. 1480, from which CERCLA's liability scheme derived, clearly intended it to apply retroactively, as was brought out in Senator Domenici's attempts to limit this reach. His success in prospectively limiting liability for natural resources damages thus required § 107(f), which manifests the general rule of retroactivity within the text of the statute via negative implication. However, Senator Domenici's eventual success in defeating the comprehensive liability scheme that was originally proposed resulted in the negative implication being born by a sole provision, but one that constitutes one-half of the entire liability scheme. A compromise was struck limiting the types of liability created by CERCLA, indeed deleting liability for every type of damages except to natural resources, whose reach had been limited by § 4(n) prior to the compromise, but nothing in the legislative history indicates that a compromise was struck limiting the clearly recognized retroactive reach of liability for response costs, the only other type of liability to survive the compromise. In this context,

---

7. In contrast, the existence of provisions limiting the scope of retroactivity implies that the status quo is retroactivity. This negative implication is distinct from the mandate that provisions not limited are not affected by the limitations, although the negative implication informs the command.

the Court finds that CERCLA's silence on retroactivity (and consequent negative implication) speaks volumes, clearly manifesting Congress' intent to impose retroactive liability for response costs and distinguishing it from the statute at issue in *Landgraf.*

## II. DUE PROCESS

Defendant's due process challenge to retroactive application of CERCLA, apparently inserted in order to advance the argument that the interest in avoiding constitutional questions counsels against retroactive application, consists entirely of the statement that "it would be an excessive use of Congress' power and a violation of Peoples Gas' due process rights to impose liability for conduct which allegedly happened between 50 and 100 years ago." (Mem. at 13). However, as the Seventh Circuit recently explained, it is well established that CERCLA's unlimited reach does not violate due process. *Davon, Inc. v. Shalala,* 75 F.3d 1114, 1126 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). Defendant's elaboration in reply fails to present an arguable basis for disregarding that precedent. Indeed, to the extent Defendant's reference to the 50 to 100 year retroactive reach in this case is an argument that the degree of retroactivity itself violates due process, the Seventh Circuit explicitly rejected that proposition in *Davon,* based upon CERCLA precedent. *Id.* Accordingly, this Court likewise rejects Defendant's due process challenge to retroactive application of CERCLA.

### CONCLUSION

For the reasons given, the Court DENIES Defendant's Motion to Dismiss.