THE NINTH AVENUE REMEDIAL GROUP, et al.

v.

FIBERBOND CORP., et al.

No. 2:94–CV–331–RL–1.

United States District Court, N.D. Indiana, Hammond Division.

Nov. 25, 1996.

Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, Joseph V. Karaganis, A. Bruce White, Mark D. Erzen, John W. Kalich, Karaganis and White, Chicago, IL, H. Alfred Ryan, Chicago, IL, for The Ninth Avenue Remedial Group.

Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, Joseph V. Karaganis, A. Bruce White, Mark D. Erzen, John W. Kalich, Karaganis and White, Chicago, IL, for American National Can Company, Ashland Chemical Company, Cargill, Incorporated, Chamberlain Manufacturing Corpo-

ration, Crown Beverage Packaging, Inc., Crown Cork & Seal, Flint Ink Corporation, General Electric Company, J.M. Huber Corporation, Monsanto Company, Morton International, Inc., Navistar International Transportation Corp., Pratt & Lambert, Inc., PPG Industries, Inc., Premier Coatings, Inc., Regal Tube, RHI Holdings, Inc., Rust–Oleum Corporation, The Sherwin–Williams Company, Valhi, Inc., The Valspar Corporation, Mobil Oil Corporation.

Mark Hellner, Chicago, IL, Stacey Rubin Silver, Chicago, IL, for American Nameplate.

Kevin J. O'Brien, Butler Rubin Saltarelli and Boyd, Chicago, IL, for Lori Corporation, Bagcraft Corporation of America, Inc.

Robyn Ice Sosebee, Nill V. Toulme, R. Wayne Thorpe, Alston and Bird, Atlanta, GA, for Barber–Green Company, Barber–Green Company, division of Caterpillar, Inc.

Christopher T. Nowotarski, Stone Pogrund Korey and Spagat, Chicago, IL, for Belmont Plating Works, Inc.

Frederick S. Mueller, Daniel C. Murray, Robert W. York, Johnson and Bell Ltd., Chicago, IL, for Betz Laboratories, Inc.

Andrew H. Perellis, Thomas D. Lupo, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, for Bretford Manufacturing, Inc.

Frederick S. Mueller, Daniel C. Murray, Robert W. York, William Anaya, Johnson and Bell Ltd., Chicago, IL, Robert S. Levin, Donald B. Levine, Beth L. Dworken, Levin and Ginsburg, Chicago, IL, for Brightly Galvanized Products.

N. Neville Reid, Ronald G. Hayden, Russell R. Eggert, Mayer Brown and Platt, Chicago, IL, for Clark Oil & Refining Corp.

Karl A. Karg, IV, H. Alfred Ryan, Chicago, IL, for Colwell/General, Inc.

Jane B. Amdahl, Joseph S. Van Bokkelen, Goodman Ball Van Bokkelen, Leonard and Kline, Highland, IN, for Commander Packaging—Packaging Dimensions, Inc. Division.

Richard W. Cosby, Cosby and Bell, Chicago, IL, for Cro–Dec, Inc.

Daniel John Voelker, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, Joel L. Herz, Tucson, AZ, for De Soto, Inc.

Thomas M. Hoban, Hanover, NH, for Desa Industries.

Carol A. Doyle, Sidler and Austin, Chicago, IL, for Deublin Company.

Scott Z. Hochfelder, Louise M. Goodwin, Wildman Harrold Allen and Dixon, Chicago, IL, Thomas W. Daggett, Wildman Harrold Allen and Dixon, Chicago, IL, for E.I. Dupont Denemours and Company.

Alfred Y. Kirkland, Jr., Brady McQueen Martin Collins and Jensen, Elgin, IL, for Elgin Industries, Inc.

John R. Jacus, Thomas S. Nichols, Laura J. Nagle, Davis Graham and Stubbs, Denver, CO, for Fiber Bond Corp.

Andrew H. Perellis, Thomas D. Lupo, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, Thomas M. Hoban, Hanover, NH, for Glidden Co.

Angelo A. Buoscio, Buoscio Pera Kramer and Nowak, Merrillville, IN, Bruce B. Marr, McKenna Storer Rowe White and Farrug, Chicago, IL, for Graph–On, Inc.

Bryan J. Green, Katten Muchin and Zavis, Chicago, IL, for Hannah Marine Corporation.

Susan H. Shumway, Shumway and Merle, Southport, CT, for Rockwell International Corp.

Timothy J. Junk, Office of Indiana Attorney General, Indianapolis, IN, for The State of Indiana.

Louis M. Rundio, Jr., Charles M. Gering, McDermott Will and Emery, Chicago, IL, for Maclean–Fogg Co.

Ann C. Tighe, Cotsirilos Stephenson Tighe and Streicker, Chicago, IL, for Estate of Steve Martell.

Adam M. Meek, Katten Muchin and Zavis, Chicago, IL, for Modine Manufacturing Company.

Eugene Propp, Propp Schultz and Kaye, Chicago, IL, for National Precision Circuits and Electronics, Inc.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant Fiberbond Corporation's Motion for Summary Judgment on the Non–Retroactivity of CERCLA, filed on March 1, 1996. For the reasons set forth below, the motion is **DENIED.**

### BACKGROUND

Fiberbond is one of many defendants in a contribution action brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA") for the cost of cleaning up the Ninth Avenue Dump Superfund site. Plaintiffs are the Ninth Avenue Remedial Group and its members. The Group is an unincorporated voluntary association of corporations created by its members to take collective action related to the site.

Plaintiffs claim that the Defendants are strictly, jointly, and severally liable under CERCLA, 42 U.S.C. §§ 9606, 9613, for the response costs at the site. The complaint alleges that the Defendants in this action are liable under 42 U.S.C. section 9607(a) as persons who arranged for the disposal, treatment, or transportation of hazardous waste to the site during the 1970's when the site operated as a chemical and industrial waste disposal facility.

According to Fiberbond, Plaintiffs seek to apply CERCLA retroactively to conduct that occurred wholly before the enactment of the act in December of 1980. Fiberbond argues that the statute cannot be interpreted as applying retroactively in light of the Supreme Court decision in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

### DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if the movant demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53,

91 L.Ed.2d 265 (1986). The issue presented in this motion is a question of law which is not influenced by the factual determinations in this case. Accordingly, the Court will determine whether Defendant is entitled to judgment as a matter of law.

Fiberbond questions the retroactive application of CERCLA in light of *Landgraf.* In *Landgraf,* the plaintiff argued that certain provisions of the 1991 Civil Rights Act ("CRA") applied to Title VII cases pending when the CRA was enacted. In rejecting the plaintiff's argument, the Supreme Court held that legislation which would increase a party's liability for its past conduct is presumed not to apply retroactively absent clear congressional intent. 511 U.S. at ——, 114 S.Ct. at 1505. Fiberbond argues that because it is not clear that Congress intended to apply CERCLA retroactively, it cannot be liable under CERCLA for conduct that took place prior to December 1980.

In *Landgraf,* the Supreme Court attempted to clarify seemingly contradictory cannons of statutory construction. On one hand, several prior opinions supported "the principle that a court should apply the law in effect at the time it renders its decision, unless doing so would resort in manifest injustice or there is statutory direction or legislative history to the contrary." 511 U.S. at ——, 114 S.Ct. at 1503 (citations omitted). On the other hand, other Supreme Court cases clearly stated that presumptively new rules do not apply retroactively. *Id.* at ——, 114 S.Ct. at 1503–04. The *Landgraf* Court concluded that despite any apparent contradiction between these two lines of cases, no case had altered the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties, to conduct that occurred before their enactment. *Id.* Such presumption is based on considerations of fairness that "dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* at ——, 114 S.Ct. at 1497.

The Supreme Court recognized that Congress has the power to enact statutes that apply retroactively within constitutional limits. *Id.* at ——, 114 S.Ct. at 1498. "Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, correct mistakes, to prevent circumvention of new statutes in the interval of its passage, or simply to give comprehensive effect to a new law Congress considers salutary." *Id.* However, to ensure that Congress has determined that the benefits of retroactive application outweigh its potential unfairness, Congress must make its intentions clear.

The *Landgraf* Court instructed the judiciary:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at ——, 114 S.Ct. at 1505. To determine whether a law operates retroactively, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at ——, 114 S.Ct. at 1499. The court should consider "the nature and the extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.*

Plaintiffs in this action sued Defendants under sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613. Section 113(f) allows contribution actions among liable persons as defined in section 107. Accordingly, Defendants will be liable as charged in the complaint if they are covered by section 107. In *Landgraf,* the Supreme Court concluded that in deciding whether to apply a provision of an act retroactively, it did not have to treat all provisions uniformly; some provi-

sions could apply retroactively while others might not. *Id.* at ——, ——, 114 S.Ct. at 1494, 1505. Therefore, this Court will consider only whether section 107, the CERCLA provision that charges defendants with liability, applies retroactively. The Court will not evaluate other CERCLA provisions which are irrelevant to this case.

Prior to *Landgraf*, several cases concluded that section 107 of CERCLA applies retroactively. *See, e.g., U.S. v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 732–33 (8th Cir.1986) [hereinafter *NEPACCO*] ("Although CERCLA does not expressly provide for retroactivity, it is manifestly clear that Congress intended CERCLA to have retroactive effect."); *U.S. v. Shell Oil Co.,* 605 F.Supp. 1064, 1072 (D.Colo.1985) (finding that CERCLA applies to pre-enactment conduct based on CERCLA's overriding scheme and purpose and on Congress' decision to impose the cost of cleanup on responsible parties); *State ex rel Brown v. Georgeoff,* 562 F.Supp. 1300, 1314 (N.D.Ohio 1983) (finding sufficient evidence that Congress intended CERCLA to apply retroactively to override the presumption against retroactivity).

Fiberbond challenges the conclusion of these courts in light of the *Landgraf* decision. *See United States v. Olin Corp.,* 927 F.Supp. 1502, 1510 (S.D.Ala.1996) ("It is understandable that, prior to *Landgraf*, lower federal courts would have tended to minimize the importance of the presumption against retroactivity given some Supreme Court precedents."); *but see NEPACCO,* 810 F.2d at 732 ("We acknowledge there is a presumption against the retroactive application of statutes"); *Shell Oil,* 605 F.Supp. at 1069 ("My analysis must begin by acknowledging the presumption against retroactive application of statutes.");[1] *Georgeoff,* 562 F.Supp. at 1306–09 and accompanying n. 9 (applying a presumption against retroactive application in deciding whether CERCLA applies retro-

actively). Several district courts have published opinions on the question of retroactivity of CERCLA after *Landgraf. See Gould Inc. v. A & M Battery & Tire Service,* 933 F.Supp. 431 (M.D.Pa.1996); *Olin,* 927 F.Supp. 1502[2]; *Nevada ex rel. Dept. of Transp. v. U.S.,* 925 F.Supp. 691 (D.Nev. 1996) [hereinafter *Nevada DOT*]; *see also United States v. Alcan Aluminum Corp.,* No. 87–CV–920, 1996 WL 637559 (N.D.N.Y. Oct. 28, 1996); *Cooper Industries, Inc. v. Agway, Inc.,* No. 92–CV–0748, 1996 WL 550128 (N.D.N.Y. Sept. 23, 1996). Only the *Olin* court decided against applying CERCLA retroactively.

This Court agrees with the majority of the cases cited above, which hold that, although there is no express provision in the act mandating retroactive application, the legislative history of CERCLA shows that Congress clearly intended to apply CERCLA liability retroactively. This conclusion is supported by the negative inference arising from the prospective limitation on liability for natural resources damages. *See* 42 U.S.C. § 9607(f). Therefore, the Court DENIES the motion.

*Express Statutory Language*

■ CERCLA does not include any provisions expressly stating that section 107(a) should apply retroactively to conduct that occurred prior to enactment. Since the section lacks such a retroactivity clause, the Court can apply it retroactively only if it finds implicitly in the statutory language, or in the legislative history, that that was what Congress clearly intended.

In its brief, Fiberbond argues that the lack of an express mandate from Congress ordering retroactivity should be determinative. Fiberbond, however, misconstrues the *Landgraf* decision. The *Landgraf* Court itself, after concluding that the 1991 Civil Rights Act does not include a retroactivity clause, proceeded to analyze the language and the legislative history of the statute. *See* 511

---

**1.** The *NEPACCO* and *Shell Oil* courts decided not only whether CERCLA applied to pre-enactment conduct, but whether responsible parties could be held liable for response costs spent before the enactment of the act. Both courts responded positively to both questions. Because those courts had to decide whether CERCLA applied to pre-enactment conduct before concluding that it also applied to pre-enactment costs, their opinions are relevant to the case at hand.

**2.** This Court learned through a telephone call to the chambers of Judge Hand, who presided over the Olin case, that the plaintiff has appealed of his order.

U.S. at ——, 114 S.Ct. at 1492; *see also Olin*, 927 F.Supp. at 1512 ("While *Landgraf* demonstrates a preference for express language regarding retroactivity . . . its discussion of other (*i.e.,* non-express) statutory language and legislative history establishes that these should be considered in determining congressional intent"); *but see Landgraf v. USI Film Products*, 511 U.S. 286, 114 S.Ct. 1522, 128 L.Ed.2d 229 (1994) (Scalia, J., concurring) (stating that he would not apply a statute retroactively absent a clear statement to the contrary in the statute itself). Nothing in *Landgraf* precludes a finding of congressional intent implied in the text of the statute or manifested in the legislative history as long as such intent is clear. Both the *Olin* and *Nevada DOT* courts, although reaching opposite conclusions about CERCLA, examined the statutory language and its legislative history. This Court cannot conclude that section 107 of CERCLA does not apply retroactively only because there is no clear statement in the statute itself indicating that it should.

The parties argue the significance of other factors in determining whether Congress intended CERCLA to apply retroactively. These factors include (1) the allegedly remedial purpose of CERCLA; (2) the effective date clause in the act; (3) the use of past tense verbs in the liability section of the statute; (4) the negative implication of retroactivity that may arise from provisions that are explicitly prospective; and (5) the legislative history of CERCLA, including the omission of an express retroactivity clause from an earlier bill.

*"Remedial" Legislation*

■ In their brief, Plaintiffs state that CERCLA is a remedial statute that should be construed liberally. The Court assumes that Plaintiffs intend to argue that the Court should apply CERCLA retroactively because it is a "remedial" statute. Plaintiffs do not explain what makes CERCLA "remedial."

The Supreme Court has permitted retroactive application of so-called "remedial" statutes. *Landgraf*, 511 U.S. at —— n. 37, 114 S.Ct. at 1507 n. 37. For example, when a new statute authorizes or affects the propriety of prospective relief, the application of such law to a pending case is not retroactive. *Id.* at ——, 114 S.Ct. at 1501. Nonetheless, the Supreme Court warns that "[w]hile that . . . holds true for some kinds of remedies, we have not classified a statute introducing damages liability as the sort of 'remedial' change that should presumptively apply [retroactively]." *Id.* at —— n. 37, 114 S.Ct. at 1507 n. 37 (citation omitted). If a statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *id.* at ——, 114 S.Ct. at 1505, the Court cannot conclude that such statute is remedial.

CERCLA created a federal cause of action that imposed liability for response costs on responsible parties. Regardless of whether prior to CERCLA responsible parties may have been held liable for response costs under state common law,[3] CERCLA conclusively established a strict liability scheme in the

---

**3.** In supporting a Superfund bill, the administration, through the Environmental Protection Agency, argued that the bill's liability provisions did not impose new liability:

> [T]he liability provisions of Superfund are not retroactive at all. They merely codify long-standing common law rules relating to liability for hazardous products and undertakings. Existing common law principles hold that in areas of ultra-hazardous activity, liability attaches to any injury resulting directly or indirectly from the activity. . . . The proposed legislation carries these legal principles into statutory law.

Letter from Douglas Costle, EPA Administrator, to the Senate Committee on Environment and Public Works (Sept. 25, 1979), *in* S.Rep. No. 848, 96th Cong., 2d Sess., at 98 (1980), *reprinted in* 1

Senate Committee on Environmental and Public Works, 97th Cong., 2d Sess., *A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), Public Law 96–510,* at 405 (1983) [hereinafter *CERCLA Legislative History* ]. *See also* S.Rep. 848, 96th Cong., 2d Sess. 14 (describing the common law legal precedents of the liability provisions in the bill), *reprinted in* 1 *CERCLA Legislative History at* 321; "Additional views for 'Superfund' report," H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 62 (statement by Rep. Gore) ("[One of the] main goals of the legislation originally was to clarify and codify long-standing common law theories as they relate to liability for damages caused by waste disposal activities."), *reprinted in* 2 *CERCLA Legislative History,* at 93.

federal system that applies uniformly throughout the country. That the statute was enacted to remedy a hazardous waste problem does not make the statute "remedial" for the purpose of retroactive application. The Court can only conclude that CERCLA "attache[d] new legal consequences to events completed before its enactment," *see Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1499, and therefore, that it applies retroactively only if Congress clearly intended it so. *See also Georgeoff,* 562 F.Supp. at 1304–06 (concluding that CERCLA is not a remedial statute because it creates an entirely new procedure for enforcing substantive rights).

*Effective Date Provision*

■ Fiberbond notes that CERCLA provides that "[u]nless otherwise provided, all provisions of the chapter shall be effective on December 11, 1980." 42 U.S.C. § 9652(a). As Defendant claims, such clause does not support in any way an intent of retroactive application. *See Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1493 ("A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."). But neither is such clause, as Defendant suggests, evidence of the contrary. *Id.* ("That language does not, by itself, resolve the question before us."); *Moore v. Califano,* 633 F.2d 727, 732 (6th Cir.1980) (stating that a statement that a statute shall take effect upon enactment is inconclusive in the question of retroactivity); *Jensen v. Gulf Oil Refining Marketing Co.,* 623 F.2d 406, 409 (5th Cir.1980) (same); *Sikora v. American Can Co.,* 622 F.2d 1116, 1120 (3d Cir.1980) (same); *but see Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1523 (Scalia, J., concurring) (finding that such effective date clause creates a presumption of prospective effect); *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 310 n. 7 (2d Cir.1981) (applying a statute to events that happened only after the statute's effective date). Most of the case law supports the conclusion that the effective date clause is meaningless in interpreting the intent of Congress with regards to the application of the statute.

Fiberbond argues further that the effective date clause is evidence of the intent of Con-gress to apply CERCLA only prospectively because the clause replaced a retroactivity clause in a prior bill. The original CERCLA bill introduced in the House of Representatives, H.R. 7020, included a section specifying that the law would apply "to releases of hazardous waste without regard to whether or not such releases occurred before, or occur on or after, the date of enactment." H.R. 7020, 96th Cong., 2d Sess. § 3072 (1980) (as first introduced on April 2, 1980), *reprinted in* 2 Senate Committee on Environment and Public Works, 97th Cong., 2d Sess., *A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), Public Law 96–510,* at 42 (1983) (hereinafter *CERCLA Legislative History* ). The *Landgraf* Court, however, found that the omission of an explicit retroactivity clause from a prior bill is not dispositive in determining retroactivity without a more detailed study of the legislative history of the bill. 511 U.S. at ——, 114 S.Ct. at 1492. ("The omission of the elaborate retroactivity provision of [an earlier bill] . . . is not dispositive because it does not tell us precisely where the compromise was struck.")

The legislative history of CERCLA does not show that the effective date clause was included to directly replace the prior retroactivity clause. By the time several House committees had reported on H.R. 7020, the retroactivity clause was no longer in the bill, but neither did the bill include the effective date clause. *See* H.R.Rep. 1016, Part I, 96th Cong., 2d Sess. 61 (1980) (including H.R. 7020 as reported by the House Committee in Interstate and Foreign Commerce on May 16, 1980), *reprinted in* 2 *CERCLA Legislative History,* at 92; H.R. 7020, 96th Cong., 2d Sess. (1980) (as reported by the House Committee on Ways and Means on June 20, 1980), *reprinted in* 2 *CERCLA Legislative History,* at 187. The effective date clause did not appear in the language of the bill until late November of 1980, included in the proposed Senate amendment No. 2631 which substituted the language of H.R. 7020 in its entirety. *See* 1 *CERCLA Legislative History,* at 563 (reprinting the Senate debate introducing Amendment 2631) and 1 *CERCLA Legislative History,* at 675 (reprinting the

language of Amendment 2631 as introduced in the Senate).

As in *Landgraf*, this Court cannot conclude that the omission of a retroactivity clause in an earlier bill and the inclusion of an effective clause much later in the legislative process prevents a finding of clear intent by Congress to apply CERCLA retroactively. The question of the retroactivity of CERCLA is not solved conclusively for Defendant simply because the act includes an effective date clause or because a prior bill included an express retroactivity clause.

### Use of Past Tense Verbs

■ One pre-*Landgraf* court opinion on the retroactivity of CERCLA noted in support of retroactive application that the language in the liability section refers to actions and conditions in the past. *See NEPACCO,* 810 F.2d at 733. CERCLA section 107 imposes liability on those who "arrang*ed*" for disposal of waste, or those who "at the time of disposal ... own*ed* or operat*ed*" the disposal site, or on those who "accept[ ] or accept*ed*" waste for transportation. 42 U.S.C. § 9607(a) (emphasis added). While the *NEPACCO* court found the past tense verbs significant, *see also Alcan Aluminum Corp.,* 1996 WL 637559, at *4; *Cooper Industries,* 1996 WL 550128, at *9, other courts have not given much weight to this argument. *See Olin,* 927 F.Supp. at 1512–13 (concluding that the language of section 107 does not provide clear evidence of Congressional intent that CERCLA be given retroactive effect); *Nevada DOT,* 925 F.Supp. at 699 ("[T]he occasional use of past verb tenses within key CERCLA provisions is a thin reed on which to support congressional intent to apply CERCLA retroactively"); *Shell Oil,* 605 F.Supp. at 1073 (finding that congressional intent cannot be divined from the verb tenses in the legislation); *Georgeoff,* 562 F.Supp. at 1310 (noting that while the use of past tense may apply to pre-enactment conduct, it is not sufficient on its own to conclude that Congress intended retroactive application). This Court agrees with the latter decisions. The Court cannot find clear congressional intent based on the verbs. At best, the use of past tense verbs in CERCLA does not conflict with retroactive application.

### Negative Implication From the Prospective Sections of CERCLA

■ Several courts have based their conclusion that CERCLA liability applies retroactively in part on some specific liability provisions of CERCLA which explicitly provide for prospective application only. Those courts concluded that, by implication, Congress prescribed retroactive application for response cost liability. *See NEPACCO,* 810 F.2d at 736–37; *Nevada DOT,* 925 F.Supp. at 701–02; *Shell Oil,* 605 F.Supp. at 1075–77.

Section 107 makes responsible parties liable for three types of costs: (1) removal and remedial actions costs; (2) other necessary response costs; and (3) natural resource damages. CERCLA section 107(f) explicitly limits recovery for natural resource damages to cases where the release and the damages occurred wholly after the enactment of the statute. 42 U.S.C. § 9607(f); *see also* CERCLA § 111(d)(1), 42 U.S.C. § 9611(d)(1) (barring recovery claims against the Superfund for natural resource damage that occurred wholly prior to enactment). In the cited cases, the courts concluded that the distinction between natural resource damages and other response costs was implicit evidence that Congress intended liability for response costs to apply retroactively.

The *NEPACCO* court supported this conclusion with legislative history. *See* 810 F.2d at 737. Citing *Shell Oil,* 605 F.Supp. 1064, the *NEPACCO* court explained that the liability provisions of CERCLA were derived largely from the Senate Bill 1480. 810 F.2d at 737. Originally, the bill imposed liability for personal injury and property damage in addition to response costs and natural resource damages. *See* S. 1480, 96th Cong., 2d Sess., § 4 (1979), *reprinted in* 1 *CERCLA Legislative History,* at 168. A Committee amendment to the bill limited liability for natural resource damages, personal injury and property damage to releases that occurred wholly after enactment. *See* S. 1480, 96th Cong., 2d Sess., § 4(n) (as reported on November 18, 1980). The bill also included liability for medical expenses with a clause that expressly limited retroactive application to expenses incurred within about three

years prior to enactment. *See id.* at §§ 4(n)(2) and (3). Although the section did not explicitly allow retroactive liability for response costs, the *NEPACCO* court found that the language of the bill, *see id.* at § 4(n)(4), the language of the Senate Report, and the debate in the Committees clearly supported the implication that response cost liability would apply retroactively. 810 F.2d at 737; *Shell Oil,* 605 F.Supp. at 1078–79. Senate Amendment No. 2631, which substituted H.R. 7020 and was then enacted as CERCLA, deleted most of the liability provisions from S. 1480. The amendment retained liability only for response costs and natural resource damages as well as the explicit limitation that natural resource damage liability would apply prospectively. The *NEPACCO* court concluded that the changes in the law, while limiting the type of liability imposed by CERCLA, still incorporated the retroactive application scheme of section 4(n) of S. 1480 which limited the natural resource damages prospectively, but it did not do so with response costs. *NEPACCO,* 810 F.2d at 737; *Shell Oil,* 605 F.Supp. at 1079.

Fiberbond argues that this negative inference approach was rejected by the Supreme Court in *Landgraf.* In *Landgraf,* the plaintiff pointed to several provisions in the 1991 Civil Rights Act which expressly provided for prospective application only. The first was a provision that was designed to exempt from the CRA a specific disparate impact lawsuit.[4] Another provision of the CRA, part of the section that extended Title VII to overseas employers, explicitly limited liability to conduct occurring after enactment. *See* section 109(c) of the Civil Rights Act. The plaintiff argued that by negative implication from these sections, the rest of the statute should apply retroactively.

The *Landgraf* Court rejected this inference. It warned that the plaintiff had placed a lot of weight on "two comparatively minor and narrow provisions in a long and complex statute." 511 U.S. at ——, 114 S.Ct. at 1493.

The Court concluded that given the controversy over retroactive application of the civil rights amendments and the great impact of those amendments, it was unlikely that Congress would have chosen to resolve the retroactivity question through negative inference drawn from two minor provisions. *Id.; Nevada DOT,* 925 F.Supp. at 700–01.

The *Nevada DOT* court, in one of the three published opinions that have considered the retroactivity of CERCLA after *Landgraf,* contrasted the prospective provisions in the Civil Rights Act with those in CERCLA and concluded that the CERCLA provisions were not narrow or minor provisions. "Their impact on CERCLA as a whole stands in sharp contrast to the impact on the 1991 Act of one section which addresses 'a single disparate impact [Title VII] lawsuit' and another section which pertains only to overseas employers. . . . In contrast, [the CERCLA sections imposing liability and limiting liability for natural resource damages] are the very core of the statute's liability scheme." *Nevada DOT,* 925 F.Supp. at 701–02 (citation omitted). Therefore, the *Nevada DOT* court found it significant that the statute limited liability for natural resource damages prospectively, but did not limit response cost liability. The court concluded that if section 107 was intended to apply only prospectively, the express limitation in natural resource damages would be superfluous. The limitation only made sense if the liability section applied retroactively as a whole. *Nevada DOT,* 925 F.Supp. at 701.

Unlike the prospective provisions in the 1991 Civil Rights Act discussed by the *Landgraf* Court which were not connected to the specific provision that the plaintiff wanted to apply retroactively, liability for response costs, liability for natural resource damages, and the prospective limitation for natural resource damages are all part of the same section in CERCLA. The history of the language of this section as discussed in *NEP-*

---

4. Section 402(b) of the 1991 Civil Rights Act provides:

Notwithstanding any other provisions of this Act, nothing in this Act shall apply to any disparate impact case for which the complaint was filed before March 1, 1975, and for which

an initial decision was rendered after October 30, 1983.

According to the Supreme Court, the provision exempted a lawsuit against Wards Cove Packing Company from the Act. *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1493.

*ACCO* and *Shell Oil* reveal no change in Congress' intent that response cost liability may apply retroactively. The Court finds that the negative implication arising from section 107(f) lends strong support to a finding that Congress intended response cost liability to apply retroactively. The Court does not have to conclude whether this negative inference would be sufficient to satisfy a finding of clear congressional intent because, as discussed below, the legislative history also supports this conclusion. *Cf. Nevada DOT,* 925 F.Supp. at 702 (concluding that Congress intended CERCLA to apply retroactively from the prospective limitation in liability for natural resource damages).

*Legislative History*

In *Landgraf,* the Court looked at the legislative history of the 1991 Civil Rights Act in search of Congress' intent in enacting the Act. *See* 511 U.S. at —, 114 S.Ct. at 1495–96. The Court concluded that the legislative history of the CRA did not reflect a general agreement with regard to retroactivity. *Id.* at —, 114 S.Ct. at 1495. At best, the Court found that the legislators agreed to disagree on whether the CRA would apply to pre-enactment conduct. *Id.* at —, 114 S.Ct. at 1496.

In contrast, in reviewing the admittedly fragmented legislative history of CERCLA, this Court agrees with the *Nevada DOT* court that the legislative history of CERCLA reveals the clear intent of Congress to provide for retroactive application of CERCLA liability provisions. *See Nevada DOT,* 925 F.Supp. at 695; *see also Alcan Aluminum*

*Corp.,* 1996 WL 637559, at \*4; *Cooper Industries,* 1996 WL 550128, at \*9. While it is true that CERCLA's legislative history may appear contradictory as it relates to other aspects of the bill, *see, e.g., Dedham Water Co. v. Cumberland Farms Dairy,* 805 F.2d 1074, 1080–81 (1st Cir.1981) (reviewing the application of section 112(a) of CERCLA); *U.S. v. Conservation Chemical Co.,* 619 F.Supp. 162, 204 (W.D.Mo.1985) (reviewing whether Congress intended to apply liability strictly), on the question of whether response cost liability applies retroactively, the history reveals in the bills considered during the second session of the 96th Congress, including the bill that ultimately passed, agreement among the legislators to hold those responsible for the dumping liable for the cleanup costs.

The legislative history of CERCLA is fragmented because it was passed as a compromise bill at the end of a lame duck session of Congress. *See* Preface, 1 *CERCLA Legislative History,* at v–vii. Desirous to pass hazardous waste site legislation before the end of the session, in light of an impending administration change, the Senate passed a compromise bill and sent it to the House for its consideration without amendment. *See* Letter from Sen. Stafford and Sen. Randolph to Rep. Florio (Dec. 2, 1980), *reprinted in* 1 *CERCLA Legislative History,* at 774. Therefore, the bill was enacted without a conference report. Preface, 1 *CERCLA Legislative History,* at vii. Because of the lack of a conference report, the reports on the prior bills presented during that session of Congress, S. 1480 and H.R. 7020,[5] and the

---

5. Two separate bills concerning hazardous waste sites were introduced during the 96th Congress: Senate Bill 1480 and House Bill 7020. *See* 1 *CERCLA Legislative History,* at 155; 2 *CERCLA Legislative History,* at 3. When introduced in July 1979 S. 1480 included a comprehensive liability section imposing strict joint and several liability for removal costs, economic loss, personal injury, damage to natural resources, loss of income, and out-of-pocket medical expenses. *See* S. 1480, 96th Cong., 2d Sess., § 14, *reprinted in* 1 *CERCLA Legislative History,* at 169–70. The bill did not include any provisions regarding the retroactive application of liability. After the bill was reviewed by the Senate Committee on Finance, the bill was amended to preclude retroactive liability for all costs except for removal costs. *See* S. 1480, 96th Cong., 2d Sess., § 4(n), *reprint-*

ed in 1 *CERCLA Legislative History,* at 499–501. The bill did not include any express provisions for the retroactive application of liability for removal costs. This bill was never debated on the floor of the Senate.

As introduced in April 1980, H.R. 7020 included a provision imposing strict joint and several liability for the cost of removal actions, and for personal injury, injury to property, and economic loss caused by hazardous waste releases. H.R. 7020, 96th Cong., 2d Sess. § 3071, *reprinted in* 2 *CERCLA Legislative History,* at 40. The bill also specified that liability applied without regard to whether the release of hazardous substances occurred before enactment of the act. *Id.* at § 3072. The bill was sent to the House Committees on Interstate and Foreign Commerce and on Ways and Means. The committees reported bills

debate on those bills, as well as the brief debate on the final bill, constituted the core of the legislative history of CERCLA. *See* 1–3 *CERCLA Legislative History.* Although Fiberbond questions the applicability of the reports and the debate on the earlier bills to CERCLA as passed, the Court finds that the report and the debates show a consistent agreement not affected by the changes in the ultimate bill that responsible parties should be liable for response costs.

The debates and reports on the bills are clear that in enacting CERCLA Congress was responding to the problem posed by existing inactive waste dump sites. The Resource Conservation and Recovery Act ("RCRA") enacted in 1976 regulated the future dumping of waste, but the law did not provide authority to deal with existing dump sites where disposal had taken place before RCRA.

> The Congress provided through the Resource Conservation and Recovery Act a regulatory mechanism to ensure proper disposal of hazardous waste and to end the negligent practices of the past. However, as many of us ... recognized early on, there was definitely a gap in existing law with abandoned or "orphan" dump sites.

2 *CERCLA Legislative History,* at 235–36 (remarks by Rep. Madigan during the House debate on H.R. 7020 on Sept. 19, 1980).

> There are two major aspects to the problem [of hazardous waste]: First, the prospective dumping, that is, dumping that will occur in the future. Second, dumping that has already occurred in the past.... [T]he prospective dumping will be addressed in a regulatory program to take effect later this fall pursuant to the mandate of the Resource Conservation and Recovery Act. What we are addressing this legislation is the dumping that occurred in the past.

2 *CERCLA Legislative History,* at 239 (remarks by Rep. Gore during the House debate on H.R. 7020 on Sept. 19, 1980). *See also* 2 *CERCLA Legislative History,* at 324 (remarks by Rep. Stockman on September 23, 1980) ("We are talking about the financial resources needed to take care of the problems of the past where some companies did a poor job or whose local jurisdictions had weak laws.") Congress enacted CERCLA to deal with the problem of such existing waste sites. See also *Nevada DOT,* 925 F.Supp. at 703 and *Georgeoff,* 562 F.Supp. at 1312 for discussions of legislative history supporting the conclusion that CERCLA was enacted to affect the cleanup of existing waste sites.

Concluding that Congress' intent was to remedy an existing wrong does not answer the question of who Congress intended to pay for the cleanup of such sites. After all, CERCLA included provisions for the creation of a cleanup fund (the so-called "Superfund"). The issue is then whether Congress clearly intended the responsible parties, as opposed to the government, to clean those existing hazardous waste dump sites. *See, e.g., Georgeoff,* 562 F.Supp. at 1312. ("The legislative intent clearly indicates and the parties agree, that Congress intended to pro-

that assigned liability only for removal costs and which did not include the express retroactivity provision. See H.R.Rep. 1016 Part I, 96th Cong., 2d Sess. (1980) (including H.R. 7020 as reported by the House Committee on Interstate and Foreign Commerce), and H.R. 7020, 96th Cong., 2d Sess., § 3071 (as reported by the Committee on Ways and Means), both reprinted in 2 *CERCLA Legislative History,* at 91–92, 185–86.

The bill that finally passed was introduced as an amendment in the Senate on November 24, 1980. *See 1 CERCLA Legislative History,* at 560 *et seq.* (reprinting the Senate debate on CERCLA of Nov. 24, 1980). The Senate amended H.R. 7020, entirely substituting the language of the bill with the Senate amendment, and sent it for approval without amendment to the House. *See* Letter from Sen. Stafford and Randolph to Rep. Florio (Dec. 2, 1980), *reprinted in 1 CERCLA Legislative History,* at 774. As discussed above, the liability provisions included in the final bill derived primarily from S. 1480, *NEPACCO,* 810 F.2d at 737, although the bill retained only those liability provisions on which there was consensus in Congress—response costs and natural resource damages. *See* Senate Amendment 2361, 96th Cong., 2d Sess. § 107 (as presented on the Senate floor on Dec. 4, 1980), *reprinted in 1 CERCLA Legislative History,* at 603; 1 *CERCLA Legislative History,* at 685 (remarks by Sen. Randolph during the debate held on November 24, 1980); 1 *CERCLA Legislative History,* at 730 (remarks by Sen. Cohen during the CERCLA debate held on November 24, 1980). Like S. 1480, the amendment applied liability for natural resources only prospectively, but it included no limitation or express retroactivity provision with regards to response costs.

vide for the clean up of the existing hazardous waste facilities with the passage of CERCLA. The dispute between the parties, however, involve the means for accomplishing that clean up.")

Congress was well-aware that in deciding to enact hazardous waste site legislation it would have to allocate the cost of response actions. Congress was also aware that if it assigned costs to those responsible for releases that occurred prior to enactment, it would impose liability on past conduct. *See* "Additional Views of Sen. Domenici, Bentsen, and Baker," S.Rep. No. 848, 96th Cong., 2d Sess. 120 ("The issue of applying the new standards retroactively remains a troubling one."), *reprinted in 1 CERCLA Legislative History*, at 427; *2 CERCLA Legislative History*, at 358–59 (remarks of Rep. Stockman during the debate on H.R. 7020 on September 23, 1980, expressing concern that the proposed law would impose liability on companies for conduct that occurred 30 years ago); Hearings on H.R. 85 and H.R. 7020 before the House Committee on Ways and Means, 96th Cong., 2d Sess. 271 (June 2, 1980) (statement of the Atlantic Richfield Company) ("As written, H.R. 7020 places the principal responsibility for the cleanup of inactive sites upon the parties responsible for their creation. In some instances, . . . retroactive liability would be imposed upon waste generators, transporters, and disposal site operators who had acted reasonably and nonnegligently when the wastes were disposed."); 126 Congressional Record S12918, S12920 (daily ed. Sept. 13, 1980) (letters from Crum and Forster Insurance Companies and from the American Insurance Association printed in the record criticizing the retroactive liability imposed by section 4 of S. 1480). At the time these comments were made, the current versions of S. 1480 and H.R. 7020 did

not include an explicit retroactivity clause. Although S. 1480 included a provision explicitly limiting the retroactivity of several types of damages, it was silent with regard to removal and response costs. Nonetheless, all those commenting on the bills expressed the belief that the bills would apply retroactively to those responsible for the releases in existing waste sites.

Despite the concern about retroactive application, the uniform answer throughout the legislative history is that those responsible for hazardous waste releases should pay for the cleanup costs irregardless of when the release occurred.[6] Senate Report No. 848 on S. 1480, in presenting the problem of abandoned waste sites, posed the question of who should pay for the consequences of a release. S.Rep. No. 848, 96th Cong., 2d Sess. 10 (1980), *reprinted in 1 CERCLA Legislative History*, at 317. According to the report, the bill answered the question by providing that those responsible for the releases should bear the costs. *Id.* at 13, *reprinted in 1 CERCLA Legislative History*, at 320. In the same manner, the report for H.R. 7020 described the bill as providing for liability of persons responsible for releases of hazardous waste. H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 1, *reprinted in 2 CERCLA Legislative History*, at 47.

Although the debates on the Senate and the House on these bills reveal that several aspects of the act were very controversial, such as the fee imposed on the chemical industry to create the Superfund, the liability provisions for personal injury, property damage, and medical expenses, and a provision calling for joint and several liability, a careful analysis of the legislative history reveals that the one aspect where the legislators seemingly agree was that responsible parties should pay for the cleanup costs: [7]

**6.** This was also the intent of the administration when it supported and signed hazardous waste site legislation. *See, e.g.,* Hearings on H.R. 7020 and H.R. 85 before the House Committee on Ways and Means, 96th Cong., 2d Sess. 10 (June 2, 1980) (statement of EPA Associate Assistant Administrator Swep Davis).

**7.** In the absence of a conference report, the Court found it necessary to review not only the reports from both the House and the Senate on

the proposed bills, but also most of the record on the floor debates of those bills and on the bill as finally passed. Pretending to discern general agreement from reading only some of the remarks by some of the members of Congress could lead to mistaken reliance on partisan comments. *See Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1495 (warning that parties and statements alone cannot support a finding of clear congressional intent on retroactivity). Although in this order the Court quotes several of the comments

[W]e have two parts to [the problem of past dumping practices]. First, abandoned dump sites where the party or parties responsible can be identified. Second, abandoned dump sites where the party or parties responsible are either unknown or insolvent or have covered their tracks sufficiently so that they cannot be assigned responsibility for the problem. With regard to that first part of the problem where the party or parties responsible are known, this bill addresses the liability faced by those companies.... I think we can agree on the general principle that where we know the party responsible we ought to affix responsibility for the problem upon that party.

2 *CERCLA Legislative History*, at 239 (remarks by Rep. Gore during the House debate on H.R. 7020 on September 19, 1980). A member of the House Committee on Commerce summarized the consensus on retroactivity:

Of particular concern to me and a number of my colleagues on the Commerce Committee during development of this legislation were the liability issues. Especially difficult were the ramifications of retroactive application of statutory liability provisions to past activities of potential defendants. The committee rejected any notion of absolute liability in this regard. While the bill does contain provisions holding defendants who caused or contributed to release resulting in incurrence of cleanup costs by the administrator, strict, jointly, and severally liable for such costs, certain important defenses and safeguards were provided in the interest of due process, fundamental fairness, and avoidance of protracted litigation that would undermine the purpose of this legislation. This hybrid liability provision was the end result of efforts to be fair and at the same time to make sure that a responsible party would

pay for damages that resulted because of his actions or inactions.

2 *CERCLA Legislative History*, at 356–57 (remarks by Rep. Madigan during the House debate on H.R. 7020 on September 23, 1980). Even congressional representatives who opposed the bill did not argue against the idea that those responsible should pay. *See, e.g.,* "Supplemental Views on H.R. 7020, Hazardous Waste Containment Act by Representatives Broyhill, Devine, Collins, Loeffler, and Stockman," H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 67 (1980) ("We do not quarrel with the proposition that a responsible party should have to pay."), *reprinted in 2 CERCLA Legislative History*, at 98; 2 *CERCLA Legislative History*, at 323 (remarks of Rep. Gramm during the House debate on H.R. 7020 on September 23, 1980) ("I believe we need an effective bill to trace the assets of those who have polluted and to trace those assets to the grave, if necessary, to recover the funds.").

The support for a bill that assigns the cleanup costs on those who were responsible for releases became particularly clear when the House debated an amendment proposed by Congressman Stockman which would have eliminated the liability provisions of H.R. 7020 and would have channeled the response program through the states. The amendment was defeated, among several reasons, because, in contrast to H.R. 7020, it did not include liability provisions that would facilitate recovering the cleanup costs from the responsible parties.[8] *See 2 CERCLA Legislative History*, at 318 (remarks by Rep. Madigan during the House debate on the Stockman amendment on September 23, 1980) ("The issue here, the real difference between the substitute and the committee bill, is that the gentleman's substitute relieves the dumpers of any responsibility. It would become the responsibility of the taxpayers to clean up the mess of the dumpers."); *2 CERCLA Legislative History*, at 321–22 (remarks by

---

on the record that support the Court's conclusion, the Court reviewed practically the entire record of the debates on the floor before reaching its conclusion.

**8.** The entire liability section of the amendment proposed by Representative Stockman as a substitute to the bill read as follows: "It is also a

purpose of this part to assist the States in recovering, from persons liable under otherwise applicable law, the costs of State cleanup and containment activities with respect to inactive hazardous waste sites." *2 CERCLA Legislative History*, at 296.

Rep. Eckhardt during the House debate on the Stockman amendment on September 23, 1980) ("[W]e have to do something about cleaning it up and we have to do something about imposing the responsibility and the cost of the cleaning up. We cannot impose those costs on the taxpayers through money generated at the Federal level and paid to the States without any requirement that the States recoup that money from those who caused the harm.").

The Senate passed the compromise bill on November 24, 1980. The supporters of the bill in the Senate conceded that the compromise did away with several major provisions of S. 1480 as priorly reported. *See 1 CERCLA Legislative History,* at 695–96 (remarks by Sen. Stafford). In order to reach an acceptable compromise, the proponents of the bill eliminated the federal cause of action for personal and economic damages, the medical expenses provisions, and the clause mandating "joint and several liability," and added liability limits and a third-party defense. *Id.; 1 CERCLA Legislative History,* at 760 (remarks by Sen. Helm); *1 CERCLA Legislative History,* at 730 (remarks by Sen. Cohen); *1 CERCLA Legislative History,* at 685–86 (remarks by Sen. Randolph). Nonetheless, none of the changes in the bill appears to reflect a change in the intent of Congress to hold parties responsible for the response costs even if this required retroactive application. The comments of the senators and the representatives following the introduction of the bill as enacted show that they still intended to hold those responsible liable for the cleanup. *See, e.g., 1 CERCLA Legislative History,* at 757 (remarks by Sen. Chaffee) ("Our Federal and State Governments must have a tool for holding liable those who are responsible for these costs."); *1 CERCLA Legislative History,* at 711 (remarks by Sen. Mitchell) (criticizing the proposed bill because, although it would hold those responsible liable for the response costs, it did not impose liability for personal injury); *1 CERCLA Legislative History,* at 799 (remarks of Rep. Fisher) ("These are the problems of toxic waste that were disposed of years ago and were not known to be all that toxic.... Industry will pay [for creating the fund]. Much of this can later be recovered through legal suits."); *1 CERCLA Legislative History,* at 813 (remarks by Rep. Jeffords) ("As we contemplated in previous House bills, this version places the costs of releases of hazardous waste on the sector most responsible for pollution and which benefits most from chemical production rather than on the victim or taxpayers.... This bill would establish liability rules to govern payment into the fund by those persons responsible for causing the releases of hazardous wastes, replenishing the fund for future cleanup.")

This Court concludes that throughout the legislative history of CERCLA, even through the changes in the bills presented to Congress, there is clear evidence that by enacting CERCLA Congress intended to hold parties responsible for the cleanup of the releases that they caused or to which they contributed, even if the releases took place prior to the date CERCLA was enacted. Because the Court finds clear congressional intent of retroactive application, the motion is **DENIED.**

*CONCLUSION*

For the foregoing reasons, Defendant Fiberbond Corporation's Motion for Summary Judgment on the Non–Retroactivity of CERCLA, is **DENIED.**